IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL D. SALES, )
 )
        Plaintiff, )
 )
vs. ) Case No. 16-cv-1304-JPG-CJP
 )
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
 )
        Defendant.[1] )

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Michael D. Sales, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff filed for DIB on March 10, 2011, alleging a disability onset date of February 11, 2011. An Administrative Law Judge (ALJ) conducted an evidentiary hearing on February 4, 2013, and issued an unfavorable decision on March 7, 2013. The Appeals Council remanded the decision in an order dated July 31, 2014. The ALJ held a second hearing on January 14, 2015, and the case was then transferred to ALJ Diana Erickson, who held a supplemental hearing on June 26, 2015. ALJ Erickson issued an unfavorable decision on September 13, 2015. (Tr. 21-36.) The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final agency decision. (Tr. 1-4.) Plaintiff exhausted his administrative remedies and filed a timely complaint with this Court.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (visited Feb. 7, 2017). She is automatically substituted as defendant in this case. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

## Issues Raised by Plaintiff

Plaintiff asserts that the ALJ erroneously failed to accommodate for plaintiff's limitations in concentration, persistence, and pace in the residual functional capacity (RFC) determination.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity ("RFC") and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he

is not disabled.

*Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008); *accord Weatherbee v. Astrue*, 649 F.3d 565, 568-69 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984); *see also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. . . . If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus,

this Court must determine not whether plaintiff was, in fact, disabled at the relevant time but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

**The Decision of the ALJ**

ALJ Erickson followed the five-step analytical framework set forth above. She determined that plaintiff met the insured status requirements through March 31, 2016, and had not engaged in substantial gainful activity since February 11, 2011. (Tr. 25.)

The ALJ also found plaintiff had severe impairments of major depressive disorder; dysthymia; personality disorder not otherwise specified (NOS); and degenerative disc disease (DDD) of the lumbar spine. Plaintiff had "no more than moderate limitations in social functioning and in concentration, persistence, or pace. . . ." (Tr. 25-26.)

ALJ Erickson opined that plaintiff had the RFC to perform light work with several restrictions, including that plaintiff's job should be focused on objects and not people. The ALJ explained that specifically, plaintiff could perform simple, repetitive tasks that involved no

4

interaction with the general public. ALJ Erickson also limited plaintiff to frequent, generally superficial, interaction with co-workers and supervisors. (Tr. 27.)

After finding plaintiff could perform past relevant work as a vending machine assembler, the ALJ concluded that plaintiff was not disabled. (Tr. 34-35.)

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born on April 5, 1957, and was fifty-three years old on the alleged onset date. (Tr. 466.) He indicated that hypothyroidism, depression, and anxiety limited his ability to work. (Tr. 469.) Plaintiff completed the twelfth grade and previously worked as a laborer at a recycling plant and as a stocker at Walmart. He also performed "warehouse work." (Tr. 470.)

Plaintiff stated he lacked the motivation to change his clothes on a daily basis and was able to focus for about five minutes before losing concentration. He became anxious around other people and experienced pain and fatigue. (Tr. 479.)

2. **Evidentiary Hearing**

An initial evidentiary hearing was conducted on February 4, 2013, at which plaintiff was represented by counsel. (Tr. 128-66.) Dr. Kathleen O'Brien, a licensed clinical psychologist, testified that she had not personally examined plaintiff but was familiar with the medical data pertaining to him. She reported that plaintiff's medical history indicated a primary diagnosis of major depressive disorder, which was recurrent, as well as diagnoses of alcohol dependency in full long-term remission, cannabinoid dependency, dysthymia, malingering, and personality

5

disorder. (Tr. 135-36.)

Dr. O'Brien opined that plaintiff had mild difficulties with activities of daily living (ADLs); moderate difficulties with social functioning; and moderate difficulties with concentration, persistence, and/or pace. (Tr. 137.)

Another evidentiary hearing took place on January 14, 2015, at which plaintiff was represented by counsel. (Tr. 89-127.) Dr. Kang,[2] a medical expert, testified that she had never personally examined plaintiff but was familiar with the medical data pertaining to him. According to Dr. Kang, plaintiff had mental impairments of depressive disorder NOS and polysubstance dependence, which was in remission. Dr. Kang opined that plaintiff's mental impairments would not impose any restrictions on ADLs but would result in difficulties maintaining concentration, persistence, and pace and four or more episodes of decompensation. (Tr. 100-01.)

The ALJ then posed several hypothetical questions to a vocational expert (VE). The VE considered an individual who was fifty-seven years old with a high school education and the same past relevant work experience as plaintiff; who was also limited to medium work and simple, repetitive tasks and instructions, meaning simple, repetitive, one/two-step tasks only; who could occasionally make decisions dealing with objects, not people; and who could occasionally interact with supervisors, coworkers, and the public. (Tr. 122-23.) The VE opined that this person could perform plaintiff's past work as a laborer and in his positions at stores and the salvage yard. Other jobs in the economy also existed that such an individual could perform. (Tr. 124.)

A supplemental evidentiary hearing took place on June 26, 2015, at which plaintiff was

---

[2] The ALJ, in his opinion, refers to a "Michelle Ryng, Ph.D., who testified at the hearing in January 2015." (Tr. 32). The Court believes the ALJ meant to refer to Michelle "Kang," who was the medical expert identified in the hearing transcript from that date.

represented by counsel. (Tr. 55-88.) A VE testified regarding several hypothetical individuals. The VE first considered a person with plaintiff's age, educational background, and past work. This person was limited to medium work and simple, repetitive tasks. He could not interact with the general public but could have frequent interaction with coworkers and supervisors, which was generally superficial, and could work with objects, not people. (Tr. 83.)

The VE opined that this person could perform plaintiff's past work as a recycler and vending machine assembler, both generally and as actually performed. Additionally, jobs existed in the economy, other than plaintiff's past work, that the hypothetical individual could perform. (Tr. 83-84.) If this person were also off-task twenty percent of the day, there would be no work available. (Tr. 84-85.)

The VE next considered an individual who was limited to light work; could sit for six hours in an eight-hour workday; could occasionally climb, balance, stoop, kneel, crouch, crawl; should avoid concentrated exposure to vibrations and hazards; and was limited to simple, repetitive tasks, implying no interaction with the general public; and frequent interaction with coworkers and supervisors, which was generally superficial. Additionally, the work should be focused on objects, not people. (Tr. 85.)

The VE testified that this person could perform plaintiff's past work as a vending machine assembler and other jobs in the economy. (Tr. 86.) If this person were also off-task twenty percent of the time, he would not be able to maintain employment. (Tr. 87.)

The VE opined that if an individual also had difficulties following even simple instructions, there would be no work available. If a person were involved in oral altercations with coworkers or supervisors on an ongoing, continual basis, he would not be able to maintain competitive employment. (Tr. 87.)

7

3. **Medical Records**

Dr. Donald Henson performed a Psychiatric Review Technique on July 7, 2011. (Tr. 657-70.) He opined that plaintiff had a marked restriction of ADLs; marked difficulties in maintaining concentration, persistence, and pace; moderate difficulties in maintaining social functioning; and one or two episodes of decompensation, each of extended duration. (Tr. 667.) Dr. Henson noted that plaintiff had a relatively short, documented history of psychiatric treatment for symptoms of depression and substance abuse, which was relatively severe at the time of the review. Dr. Henson opined, however, that compliance with treatment should return plaintiff's condition to premorbid levels. (Tr. 669.)

On October 5, 2011, Dr. Howard Tin completed a Psychiatric Review Technique (Tr. 764-77), and Mental RFC Assessment (MRFCA) of plaintiff, which is structured as a three-section standard form (Tr. 778-81).

Section I of the MRFCA "contains twenty mental functions grouped under four main categories: (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. To the right of each of the items is a series of decision check blocks under the headings 'not significantly limited,' 'moderately limited,' 'markedly limited,' 'no evidence of limitation,' and 'not ratable on available evidence.'" *Varga v. Colvin*, 794 F.3d 809, 811 n.1 (7th Cir. 2015).

Relevant here, Dr. Tin indicated under the "sustained concentration and persistence" category that plaintiff was not significantly limited in his ability to carry out very short and simple instructions; sustain an ordinary routine without special supervision; or complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

8

Plaintiff was moderately limited in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; and work in coordination with or proximity to others without being distracted by them. There was no evidence of limitation in plaintiff's ability to make simple work-related decisions. (Tr. 778-79.)

Section III of the MRFCA, entitled "Functional Capacity Assessment," provides an opportunity for the consultant to explain the summary conclusions from Section I in narrative form. Dr. Tin explained that plaintiff was fully oriented and free of serious memory problems. Plaintiff could remember locations and work-like procedures and could understand and remember short, simple and detailed instructions. Plaintiff had difficulty carrying out detailed instruction. He could carry out short and simple instructions. Dr. Tin noted plaintiff's claims that he had a short attention span and could not complete tasks. Plaintiff also alleged he had problems following spoken and written instructions. (Tr. 780.)

Plaintiff had difficulty interacting appropriately with the general public and tended to withdraw and self-isolate when he was irritable. Therefore, Dr. Tin opined that plaintiff should be limited to work tasks that did not require interaction with the public. Dr. Tin further opined that plaintiff had the ability to respond appropriately to changes in work settings, to be aware of normal hazards, and to travel in unfamiliar settings. (Tr. 780.)

## Analysis

Plaintiff argues that the ALJ failed to account for his moderate limitations in concentration, persistence, or pace (CPP) in the RFC finding and in the hypotheticals posed to the VE.

A plaintiff's RFC is "the most [the claimant] can still do despite [his or her] limitations."

20 C.F.R. § 404.1545. "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id.*

The ALJ determined that plaintiff was moderately limited in CPP but did not explicitly provide for restrictions in "concentration, persistence, or pace" in the RFC determination or in the hypotheticals to the VE. (Tr. 26.) Instead, the ALJ's RFC assessment limited plaintiff to jobs involving "simple, repetitive tasks that involve no interaction with the general public." (Tr. 27.)

The Seventh Circuit Court of Appeals has repeatedly held that although there is no *per se* requirement that the ALJ use the phrase "concentration, persistence and pace," the restriction to simple, repetitive tasks is not ordinarily an adequate substitute. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). Where, however, the narrative assessment in Section III "adequately encapsulates and translates" the CPP limitations, the ALJ may rely on the narrative instead of specifically referencing "concentration, persistence, or pace." *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015).

The Commissioner asserts that the ALJ's RFC assessment properly relied on Dr. Tin's Section III narrative. She cites to *Milliken v. Astrue*, 397 F. App'x 218 (7th Cir. 2010), and *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002), where the Seventh Circuit Court of Appeals excused the ALJs' failures to address certain mental limitations because the consultant effectively translated those findings into a specific RFC assessment.

The most glaring flaw in the Commissioner's argument is that Dr. Tin did not even opine that plaintiff should be limited to "simple, repetitive tasks." Dr. Tin wrote in the narrative

10

portion of the MRFCA:

> Claimant can also understand and remember short simple and detailed instructions. Claimant has difficulty carrying out detailed instructions. Claimant can carry out short and simple instructions. . . . Claimant has difficulty in interacting appropriately with the general public and tend [sic] to withdraw and self isolate [sic] when irritable, so limit work tasks that do not require interaction with the general public.

(Tr. 780). Moreover, the ALJ stated that he only afforded Dr. Tin's MRFCA "some weight," specifically giving credence to Dr. Tin's findings of "some moderate limitations" and his conclusion that plaintiff should not interact with the public. (Tr. 32). There is no indication that the ALJ actually adopted Dr. Tin's narrative assessment.

This case is distinguishable from *Johansen* and *Milliken* on other grounds as well. In *Johansen*, the ALJ's hypothetical included a restriction to "repetitive, low-stress work," which addressed the claimant's panic disorder that was the foundation of the claimant's limitations in CPP. *O'Connor-Spinner*, 627 F.3d at 619 (citing *Johansen*, 314 F.3d at 285, 288-89). Unlike the case here, *Johansen* did not actually hinge on the adequacy of limiting a claimant to simple, repetitive tasks. "Rather, the court noted that when the limitations were stress-related or panic-related and the hypothetical restricted a claimant to low-stress work, the hypothetical question served its purpose of informing the vocational expert of all of the claimant's limitations." *Miller v. Colvin*, No. 1:11-cv-01186-SEB-MJD, 2013 WL 796722, at *4 (S.D. Ind. Mar. 1, 2013.) As stated in *O'Connor-Spinner*, hypotheticals limiting someone to "simple, repetitive tasks" do not necessarily accommodate a claimant's limitations in CPP when the underlying conditions are not mentioned as well. *O'Connor-Spinner*, 627 F.3d at 620. Plaintiff's underlying impairments of personality disorder NOS and polysubstance abuse were not noted in the hypotheticals, so the hypotheticals in this case did not serve their purpose.

In *Milliken*, a medical expert identified the claimant's limitations in CPP, yet opined that

the claimant could still sustain unskilled work tasks. The Seventh Circuit Court of Appeals held that the ALJ did not err in omitting CPP restrictions in the RFC or hypotheticals because the expert accounted for them in concluding the claimant could perform unskilled work. Here, however, neither Dr. Tin nor any of the psychological experts who testified at the hearings determined that plaintiff could perform certain work despite his limitations with CPP.

The Commissioner's argument is an *ad hoc* attempt to justify the faulty RFC assessment that the Seventh Circuit Court of Appeals has rejected time and time again. "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's positions." *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009). Because the ALJ omitted plaintiff's limitations in CPP from the hypotheticals and the RFC, he failed to build a logical bridge between the evidence and the RFC assessment. Additionally, it is not determinable whether the VE's testimony constitutes substantial evidence of the jobs plaintiff can do. Therefore, remand is required.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**
**DATE: August 28, 2017**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**